98 N.J. Super. 224 (1967)
236 A.2d 625
HUGO COSTABILE AND AMERICO COSTABILE, PLAINTIFFS,
v.
ESSEX LINOLEUM AND CARPET CO., INC., FEDERATED BUILDING CORP., ANTHONY COSTABILE AND PASQUALE COSTABILE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 6, 1967.
*225 Mr. Thomas E. Durkin, Jr., attorney for plaintiffs.
Messrs. Lordi, Lordi & Bianchi, attorneys for defendant Pasquale Costabile (Mr. James P. Lordi appearing).
*226 Mr. Harold Chipperson, attorney for defendants Essex Linoleum & Carpet Co., Inc., Federated Building Corp. and Anthony Costabile.
HERBERT, J.S.C.
Plaintiffs base their suit upon our statute relating to deadlocked corporations, N.J.S.A. 14:13-15. They filed their verified complaint and obtained an order directing defendants to show cause why the statutory relief being sought should not be granted. On or about the return day of the order to show cause it became apparent that there were disputes which would have to be resolved in order to decide whether the statute should or should not be applied. About the same time answers were filed for all of the defendants, and in addition Pasquale Costabile filed a counterclaim in two counts, together with a cross-claim.
Instead of presenting disputed matters for decision on affidavits, counsel for all parties joined in a request that the case be set down for the taking of testimony. That was done, and it may be noted that the procedure thus adopted appears to be consistent with the comments about handling corporate deadlock cases which were made in Freidus v. Kaufman, 35 N.J. Super. 601 (Ch. Div. 1955). The hearing has now progressed to a point where it is clear that a basic question should be decided, for subsequent proceedings will depend upon what decision is reached.
This basic question relates to the power of a New Jersey corporation to issue its stock as security for a loan made to it by the person to whom the stock is to go. Essex Linoleum & Carpet Co. Inc. was incorporated in December 1948. The incorporators were plaintiffs and the individual defendants. Hugo, Americo and Anthony Costabile are brothers. Pasquale is their father. The certificate of incorporation provided for a total of authorized capital stock consisting of 2,500 shares of common stock without par value. It also provided for an initial issue of 120 shares, being *227 30 shares for each of the four incorporators. Article Fifth of the certificate reads:
"FIFTH: All or any part of said shares of common stock without nominal or par value, may be issued by the corporation from time to time and for such consideration as may be determined upon and fixed by the Board of Directors, as provided by law."
Differences have arisen between the four men which apparently are irreconcilable. On the one side are Pasquale, the father, and Anthony. On the other side are plaintiffs Hugo and Americo. If each man holds one-fourth of all of the stock legally issued by the Essex company, and each man is a director, then the deadlock statute would apply. Defendants contend, however, that the case does not come under the deadlock statute because Pasquale owns more than one-fourth of the outstanding stock of the Essex company. At the base of this contention is a resolution of the board of directors of the company which appears in the minute book only in the form of a certification by Anthony J. Costabile, as secretary-treasurer, that the resolution was duly adopted at a duly constituted meeting of the board of directors. The certification is dated December 22, 1953, but contains no statement about the date of the meeting of directors. The text of the resolution (as it appears in this certificate) is as follows:
"RESOLVED, that the president and secretary of this Corporation be and they are hereby authorized to borrow money for this company from Pasquale Costabile and to give therefor such promissory notes and pledges as to stock together with the right to vote such stock as may seem proper to secure such loans, and the said president and secretary are hereby authorized to make and execute with the said Pasquale Costabile such agreement or agreements with respect to securing of indebtedness of this company with common stock of this company together with voting rights therein as may be required or as may be expedient."
A note dated December 22, 1953 has been produced by Pasquale Costabile. By its terms it obligates Essex Linoleum *228 & Carpet Co. Inc. to pay him $30,000 on demand, with interest. The note was executed for the corporation by Pasquale Costabile, president, and opposite his signature appears that of Anthony J. Costabile, secretary-treasurer. Pasquale has also produced a note dated December 31, 1962 and a note dated August 2, 1963, each for $10,000. The first note recites the giving of 30 shares of stock as collateral security, and the second and third notes 10 shares each. Stock certificates have been marked in evidence which conform as to date and as to total amounts with the recitals in the three notes. Each of these certificates names Pasquale Costabile as the stockholder and each was executed for the corporation by Pasquale as president and Anthony as secretary-treasurer.
The three notes are in the same form except, of course, as to date, amount to be repaid, and number of shares to be issued as collateral security. All of them contain this language:
"That the issuance of such stock is understood to include all voting and dividend rights until such obligations secured by such stock is paid,"
and goes on to state
"That upon payment of the sum herein set forth that the stocks are to be returned to the corporation as treasury stock."
N.J.S.A. 14:8-6 relates to the issuance of no-par stock and contains the following provisions:
"Every corporation organized under this title may issue and may sell its authorized shares without nominal or par value, from time to time, for such consideration as may be prescribed in the certificate of incorporation, or, if so provided in the certificate of incorporation, as from time to time may be fixed by the board of directors, or, if no such provision is made in the certificate of incorporation, then with the consent of two-thirds of each class of the stockholders having voting powers given at a meeting called for that purpose.

*229 * * * * * * * *
Any and all shares without nominal or par value issued as permitted by this article shall be deemed fully paid and nonassessable, and the holder of such shares shall not be liable to the corporation or its creditors in respect thereof."
It has already been noted that the board of directors of the Essex company is empowered by the certificate of incorporation to fix the consideration for which stock can be issued.
Assuming that Pasquale Costabile loaned a total of $50,000 to the Essex company which has not been repaid and for which he holds the notes and stock certificates described above, it must be asked whether our statute regulating the issuance of no-par stock was satisfied here and whether the shares in question are validly outstanding ones which Pasquale has a right to vote. Concerning these questions it will be apparent that if the power exists to pledge authorized but previously unissued stock as security for a loan made to the issuing corporation, that power could be abused. For example, a corporation might issue a disproportionately large amount of stock to secure a relatively small loan and by giving the pledgee the right to vote the stock could thereby alter the balance of power between opposing groups of stockholders. Also, issuing such new stock would not improve the worth of the corporation from a general creditor's viewpoint, as would a sale for cash or an exchange for valuable property; on the balance sheet the proceeds of the loan would be reflected as an asset, but would be offset by the liability to repay.
In the case before us there is no suggestion that the stock was issued to defeat the rights of other stockholders. In fact, the three other stockholders would seem to have solicited the loans from their father to carry on the business of the corporation. Exhibit P-1A indicates that the board of directors authorized pledges of stock to Pasquale. Finally, the amount of the stock pledged, 50 shares out of a total of 2,500 authorized shares and 120 outstanding shares, to secure *230 a total loan of $50,000 does not appear to be disproportionate in favor of the pledgee.
No New Jersey cases have been found in which our courts have considered the validity under our Corporation Act of issuing stock to secure a loan to the corporation. Although Andrews v. Guayaquil & Quito R.R. Co., 73 N.J. Eq. 150 (Ch. 1907), dealt with a somewhat similar situation, it really involved an alleged pledge of stock issued and outstanding and therefore is not in point. In other jurisdictions, however, the issuance of stock under circumstances like those of the present case has been held to be valid. 11 Fletcher, Cyclopedia of Corporations, (perm. ed.), § 5198, p. 580, has this to say on the subject:
"Although there seem to be some holdings to the contrary, according to the great weight of authority, a corporation having unissued stock in its treasury may lawfully pledge the same as security for a debt previously contracted, or as security for a loan made to it, or a debt otherwise contracted at the time, unless it is expressly prohibited from doing so by some charter or statutory provision, and the corporation will be estopped to question the validity of the transaction. In speaking of stock so pledged the Supreme Court of the United States has said: `Though issued in form, it was only issued in a qualified sense, to subserve a specific purpose by way of collateral security for a limited period, and was returnable to the company when that purpose should be accomplished.'
It has been held that a pledge of unissued stock is not prohibited by a constitutional or statutory provision that no corporation shall issue stock except for labor done, services performed or money or property actually received, and that all fictitious increases of stock shall be void, although the face value of the stock so pledged exceeds the amount of the indebtedness to be secured. But there is authority to the contrary."
Cases from an impressive number of jurisdictions are cited in support of this conclusion about the majority view. Among them is Granite Brick Co. v. Titus, 226 F 557 (4 Cir. 1915). That case involved substantial sums of money advanced by Titus to defendant, a South Carolina corporation, for the purpose of constructing a plant for the manufacture of bricks. In return, and pursuant to a resolution *231 of the stockholders, the corporation gave him unissued capital stock as collateral security, with the power to vote the stock. Titus brought the action to determine his status. The corporation contended that its acts were ultra vires and that plaintiff had no greater status than a simple contract creditor. The court first held (p. 569) that the real value of stock issued did not exceed the amount of the debt and therefore it satisfied a South Carolina constitutional provision similar to N.J.S.A. 14:8-9. The court went on to state that even if the pledge were ultra vires, the fact that all the stockholders had assented, and the corporation had enjoyed the use of the money loaned, it was estopped from defending on the grounds of ultra vires acts (p. 572).
Up to the point in the hearing which has now been reached, the record before me contains no indications that Pasquale Costabile did not lend the Essex company a total of $50,000, or that the money loaned was used for anything but corporate purposes. Moreover, the proofs are that all four of the individual litigants were actively engaged daily in carrying on the corporate business; each of them was in a position to know that substantial sums were coming into the corporate treasury as a result of this borrowing. The book value of the Essex stock issued as security was less than the total of the loans, and it cannot be said that an excessive amount of stock was issued for this purpose.
I find nothing in our Corporation Act which in my judgment indicates that we in New Jersey should take a view which is contrary to the weight of authority in other jurisdictions. I therefore conclude that the shares issued to Pasquale Costabile as collateral security for repayment of the loans he made to the Essex company are not invalid as a matter of law and must be regarded as shares which are at this time issued and outstanding. This conclusion, however, will not stand in the way of an application of our deadlock statute unless Pasquale Costabile can vote the shares.
*232 The Corporation Act, N.J.S.A. 14:10-7, provides that a pledgor rather than a pledgee shall vote shares which have been pledged unless there has been a transfer on the books of the corporation, by the terms of which the pledgee has expressly been empowered to vote. The usual, and perhaps the only situation to which this statute would apply, is one in which a holder of duly issued and outstanding stock pledges it to secure his own indebtedness. I think the statute has no application to the present problem, but if it does apply, the terms of pledge spelled out in the notes provide that Pasquale Costabile shall have the right to vote the stock until the loans are repaid.
In 5 Fletcher on Corporations (perm. ed.), § 2034, pp. 177-178, there is this pertinent comment on voting rights:
"On the other hand, one to whom a corporation has issued a part of its unissued stock as collateral security for money loaned to it is entitled to vote such stock, especially where it is so agreed at the time the stock is issued and the money loaned."
The case cited for this proposition is Granite Brick Co., supra, where the court said:
"The holder of stock as collateral security for money loaned to the corporation is entitled to vote at a stockholders' meeting, especially when it is so agreed upon at the time the stock is issued and the money loaned." (at p. 567)
It may be added that our statute, N.J.S.A. 14:10-7, on the voting of pledged stock, even though it appears inapplicable to pledges like those before me, is some indication of a policy that pledgee be allowed to vote stock held by them if their voting rights are adequately stated. Both the resolution authorizing the use of stock as security and the notes held by Pasquale Costabile expressly affirm voting rights by him on stock issued to secure the indebtedness.
*233 My ultimate conclusion with respect to Essex Linoleum & Carpet Co., Inc. is that Pasquale Costabile has the right to vote 50 shares of stock pledged with him in addition to the 30 shares specified in the certificate of incorporation as his initial holdings. Therefore, the deadlock statute does not apply to that corporation.
Turning to Federated Building Corp., its certificate of incorporation, filed September 25, 1961, shows that Hugo, Americo and Anthony Costabile were the incorporators and that each subscribed to 33 1/3 shares of no-par stock out of an authorized total of 2,500 shares. The by-laws provide in article III, section 2, for a board of three directors. The minute book, like that of Essex Linoleum & Carpet Co., Inc., has been very poorly kept. It contains nothing to show that the three original stockholders were ever formally elected as directors. The proofs, however, have been to the effect that they have acted as directors, and I conclude that they hold office in a de facto capacity if they do not enjoy the full status of de jure directors. There being a board of three, the provisions of the deadlock statute do not apply to Federated Building Corp.
As to current stockholdings in Federated, its minute book also contains a certificate of Anthony J. Costabile to the effect that a resolution was adopted by the directors authorizing the corporation to borrow from Pasquale Costabile and issue stock to him as security. The date of this certificate is October 5, 1963. There was marked in evidence a purported stock certificate bearing Pasquale's name, dated December 31, 1964 and made out for 34 shares. It has been signed only by Anthony J. Costabile and does not bear a second signature, as the by-laws require. Other purported certificates of Federated put in evidence, including two naming Aaron Schurman as holder of a total of 15 shares, and three for 33 1/3 shares each, respectively naming Hugo, Anthony and Americo Costabile, are signed in the same way. If these are valid certificates, or indicate shareholdings for which valid certificates should be issued, then *234 there is in Federated no deadlocked balance of shareholders. I think it unnecessary to resolve at this stage the uncertainties over partially unsigned stock certificates since the threeman board of directors makes the deadlock statute inapplicable.